IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Roberto C. Mendez, *et al.*          }
                                      }
    Plaintiff,                     }
                                      }
v.                                    }   CIVIL ACTION NO. H-01-0523
                                      }
Ameri-Forge Corporation, *et al*.    }
                                      }
    Defendants.                    }

## OPINION & ORDER ON SUMMARY JUDGMENT

Pending before the court is the Motion of Defendants Tanglewood Investments, Inc., AF Acquisition Company, and Ameriforge Corporation, a Texas Corporation, for Summary Judgment or, in the alternative, Motion for Dismissal for Want of Prosecution. (Doc. 64) The court initially notes that such motion remains unopposed, and has remained so for some time, and pursuant to local rules 7.3 and 7.4, such is taken as a signification of non-opposition. Nevertheless, the court has reviewed the materials filed by defendants and concludes that such should be granted on the merits as based upon the admissions of the individual Plaintiffs and the unnecessarily drawn-out nature of this action.

Plaintiffs are Justo Andrade, Santos Andrade, Israel Avalos, Rodolfo Barragan, Felipe Barron, Jose Carlos Benitez, Jose Caballero, Jose Chavez, Rafael Cruz, Jonathan Escobar, David Garcia, David Lopez, Mario Magano, Jose Maldonado, Genaro Martinez, Roberto Mendez, Aldo Mota, Antonio Rivera, Mario Rodriguez, Juan Sanchez, Jose Saravia, Rudys Sorto, Cornelio Sosa, Gerardo Sosa, and Angel Velasquez (collectively, "Plaintiffs"). Plaintiffs filed the instant lawsuit on December 22, 2000, alleging causes of action for violation of Plaintiffs' free speech rights under the Texas Constitution Bill of Rights, employment discrimination and retaliation based upon national origin under sections 21.055, 21.252, and 21.254 of the Texas Labor Code; and employment discrimination based upon national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, including claims for verbal and physical abuse and retaliation. (Doc. 1, Exh. 1, pp. 7-10.)

The history of this action is a troubled one. After the commencement of this action, and the entry of a scheduling order (Doc. 12) and initial disclosures (Doc's 15 & 16), Plaintiffs had designated Rand Allen Mintzer as attorney in charge, with Jonathan Gol, the then acting attorney in charge, to remain active in representation as well. (Doc. 18.)

On December 4, 2001, Defendant AF Acquisition ("The New Ameri-Forge") had served its First Set of Interrogatories and Defendant Tanglewood served its First set of Requests for Production upon each of the 25 Plaintiffs via hand delivery to Plaintiffs' *then* attorney of record, Rand Allen Mintzer. (Doc. 64, Exh. 51, Johanna Fister Norvell Aff., ¶ 2.) On December 5, 2001, Defendant Tanglewood served its First Set of Requests for Admission to each of the 25 Plaintiffs via hand delivery to Plaintiffs (*Id*. at ¶ 3.) Each of these requests gave Plaintiffs 60 days to respond, and none of the Plaintiffs provided any response to any of the referenced discovery requests by the required date. (*Id*. at ¶¶'s 2, 3 & 4.) True and correct copies of these Requests for Admission ("RFA") are attached to Defendants' Motion for Summary Judgment as Exhibits 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, and 49. (*Id*. at ¶ 3.)

Meanwhile, on March 11, 2002, Defendants Global Industrial Technologies, Inc., Global Industrial Technologies Services Company, GPX Forge, Inc., and GPX-Forge-U, Inc. filed a notice of Bankruptcy, stating that on February 14, 2002, they had filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania, thereby triggering an automatic stay as to them pursuant to 11 U.S.C. § 362. (Doc. 28.) On March 21, 2002, the court vacated several actions it had taken prior to being informed of the stay as well as the then active scheduling order, and the court advised remaining Defendants Tanglewood and the New Ameri-Forge to inform the court when the bankruptcy stay was lifted. (Doc. 31.)

Subsequently, on January 29, 2003, Rand Allen Mintzer moved to withdraw as attorney in charge for Plaintiffs. (Doc. 39.) The court granted such request on April 8, 2003. (Doc. 42) Unbeknownst to the court at that time, Plaintiffs other attorney, Jonathan Gol was deceased and Plaintiffs were left without representation, and therefore, the court ordered Mr. Mintzer to provide the addresses of the Plaintiffs so that they could be contacted. (Doc. 45.) Having received this information, the court ordered the parties to come before Magistrate Judge Frances H. Stacy for a status conference, at which conference the court urged Plaintiffs, now *pro*

*se*, to determine whether they wished to proceed against those Defendants remaining in the action, or stay and administratively close the action as to these Defendants, pending the outcome of the bankruptcy action of the other Defendants. (Doc. 47.) Thereafter began a long struggle, wherein the clerk's office attempted to contact each individual Plaintiff. Some Plaintiffs apparently appeared *pro se* at the scheduling conference before Magistrate Stacy. (Doc. 50) Defendants Tanglewood and Ameri-Forge opposed any stay as to them, and informed the court that Plaintiffs had taken virtually no action against, nor engaged in discovery with these remaining Defendants since the action had commenced. (Doc. 48.)

Finally, on June 30, 2004, Lionel Mills, entered the action seeking allowance to appear as attorney in charge for Plaintiffs. (Doc. 52.) The court allowed Lionel Mills' substitution as counsel on August 12, 2004. (Doc. 53.) The court also extended the scheduling deadlines. (Doc. 58.) However, after Lionel Mills subsequently replaced Rand Allen Mintzer as Attorney in Charge for Plaintiffs, on August 17, 2004, Defendants served Plaintiffs again, through Mr. Mills, with copies of the outstanding discovery requests previously referenced. (Doc. 64, Exh. 51, Norvell Aff., ¶ 5.) Ms Norvell avers she also informed Mr. Mills by letter at that time that Plaintiffs had waived all objections and all admissions were deemed admitted, but that Plaintiffs had an additional 60 days to respond to the discovery requests. (*Id*.) None of the Plaintiffs provided any responses and Defendants filed a Motion to Compel Discovery Responses on October 19, 2004, which the court granted with an Order entered November 30, 2004, ordering that Plaintiffs file their responses within 10 days. (*Id*. at ¶¶'s 5 & 6; *See* Doc. 61.) In violation of the court's order, neither by December 28, 2004, nor as of January 18, 2005, had the Plaintiffs provided answers to these discovery requests (*Id*. at ¶ 7; *See also* Doc. 70, p. 3.)

Based upon the aforementioned admissions, the remaining Defendants to the action have composed a Summary Judgment Motion which eliminates all of the Plaintiffs' claims, and as previously stated, Plaintiffs have filed no opposition, explanation, or request for extension of time.

Defendants show that Plaintiffs were employed by Ameri-Forge Corporation, a Delaware corporation ("The Old Ameri-Forge"), which was wholly owned by GPX Corp., a Nevada Corporation, which in turn was wholly owned by Defendant Global Industrial Technologies, Inc. ("Global"). (Doc. 64, Exh. 54, Asset Purchase Agreement, p. 1.) Defendant

AF Acquisition purchased the assets of The Old Ameri-Forge from Global in an Asset Purchase Agreement on or about June 22, 1999 (the "Acquisition Date").  (*Id*. at p. 11, ¶ 2.4 (setting forth the closing date)).  Thereafter, AF Acquisition changed its name and began operating as the Ameri-Forge Corporation, a Texas corporation ("The New Ameri-Forge").  (Doc. 64, Exh. 53, Articles of Amendment.)  Defendants assert that Defendant Tanglwood is entitled to Summary Judgment on all of Plaintiffs' claims because it never employed any of the 25 Plaintiffs.  (Doc. 64, p. 3 (citing Exh. 52, Affidavit of James J. Nelson, ¶ 4 & 5).)  Moreover, depending upon Plaintiffs' deemed admissions, Defendants argue that all Plaintiffs have admitted that Tanglewood did not participate in any actions, omissions or statements that form the basis of Plaintiffs' discrimination, retaliation, or freedom of speech claims.  (*Id*. at pp. 3-4, n. 5.)

In its Motion for Summary Judgment, Defendants assert that 17 of the 25 Plaintiffs were terminated from employment with the Old Ameri-Forge prior to the Acquisition Date, with the majority of these terminations occurring on or about February 12, 1999.(*See* Doc. 64, n. 1) Accordingly, assert Defendants, these 17 Plaintiffs were never employed by the New Ameri-Forge. Defendants further assert the employment of three other Plaintiffs terminated on July 2, 1999, ten days after the Acquisition Date, while the employment of another Plaintiff terminated a few months later on October 8, 1999. (*Id*. at p. 3, n. 2)  Four Plaintiffs remain employed by The New Ameri-Forge. (*Id*. at n. 3.)  Defendants assert that none of the 25 Plaintiffs filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") until after the Acquisition Date, and Defendants assert that accordingly, none of the named Defendants - including Defendants Tanglewood, AF Acquisition, or The New Ameriforge had notice of any of the 25 Plaintiffs' claims at the time of the acquisition.   (*Id*. at p. 3, n. 4)

Furthermore, as with Tanglewood, Defendants assert that AF Acquisition and the New Ameriforge are also entitled to summary judgment on all of Plaintiffs' claims as Plaintiffs have admitted that such Defendants did not participate in any of the actions, omissions or statements that form the basis of Plaintiffs' discrimination, retaliation, or freedom of speech claims.  (*Id*. at p. 4, n. 6; pp. 25-6.)  Plaintiffs have also admitted that neither AF Acquisition and the New Ameri-Forge ever employed the majority of Plaintiffs.  (*Id*. at p. 26.)

Furthermore, even though AF Acquisition/The New Ameri-Forge acquired the assets of Plaintiffs' former employer, The Old Ameri-Forge, as part of the Asset Purchase Agreement, and on June 22, 1999, these Defendants assert they are not subject to successor liability for Plaintiffs' claims because they did not contractually assume Plaintiffs' claims in the Asset Purchase Agreement because they did not have notice of these claims until after the Acquisition Date. (*Id*. at p. 26.) Initially, Defendants argue that Plaintiffs did not plead a theory of successor liability. (*Id*.) Furthermore, under Texas state law, the purchasing company (in this case AF Acquisition) has no successor liability for the selling company's obligations unless the purchasing company *expressly assumes* those obligations. *McKee v. Am Transfer & Storage*, 946 F. Supp. 485, 487 (N.D. Tex. 1996) (*citing* Tex. Bus. Corp. Act. Ann. Art. 5.10B (Vernon 1996)). The Asset Purchase Agreement here stated that AF Acquisition only assumed specifically identified Assumed Liabilities. (Doc. 64, Exh. 54, Asset Purchase Agreement, p. 10, ¶ 2.2.) Nevertheless, the Fifth Circuit Court of Appeals in *Rojas v. TK Communications, Inc.*, recognized that "the doctrine of successor liability has been extended to claims asserted under Title VII and related statutes." 87 F.3d 745, 750 (5th Cir. 1996) The Court discussed a nine-factor test to determine whether successor liability should be imposed in a particular case. *Id*. at 750.

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product. (*Id*.)

The Court noted, however, that the first two factors are of critical importance, and the remaining seven simply "provide a foundation for analyzing the larger question of whether there is a continuity in operations and the work force of the successor and predecessor employers." *Id*. (*citing Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 751 (7th Cir. 1985)). In *Rojas* the court did not find successor liability existed, even though the successor had notice of the claim, because the predecessor company was not a viable entitiy. 87 F.3d at 750-51. Defendants stress that AF Acquisition and the New Ameriforge had no notice of Plaintiffs' claims as of June 22, 1999, the

date of the acquisition of Old Ameri-Forge's assets. (Doc. 64, p. 28.) Relying on Plaintiffs' admissions, Defendants additionally argue the Charges of Discrimination sent by the EEOC were the first notice, oral or written, to any Defendant of the claims in this lawsuit, and that the first of such notices were dated July 30, 1999, nearly a month after the Acquisition Date. (Doc. 64, p. 28.)

Second, with respect to the ability of the predecessor to provide relief to Plaintiffs, Defendants assert that Defendant Global Industrial Technologies, Inc., the parent company of the the Old Ameri-Forge, or its related entities (the Global Defendants), were still viable entities at the time Plaintiffs initially filed their suit nearly five years ago on December 22, 2000; however, on or about February 14, 2002, these Global Defendants filed voluntary petitions in bankruptcy under Chapter 11 in the Western District of Pennsylvania, and Plaintiffs have failed to file Proofs of Claim against the Global Defendants in the Bankruptcy Court by February 23, 2003, the deadline set by the Bankruptcy Court. (*Id.*, pp. 29-30, n. 17.) The second critical factor under *Rojas* is therefore, indeterminate, and thus, Defendants argue that pursuant to *Rojas*, as the Defendants acquiring The Old Ameri-Forge never received notice of the pending suits, due to the absence of at least one critical factor, successor liability does not obtain. (*Id.* at pp. 29.)

Finally, Defendants also seek dismissal of the instant action for Plaintiffs' want of prosecution under Fed. R. Civ. P. 41(b). (*Id.* at p. 30.) Stressing Plaintiffs' minimal involvement over four years of litigation, the history which the court has recounted in brief above, Defendants concentrate especially upon Plaintiffs total failure to engage in the discovery process, but also emphasize that with the basis of these Plaintiffs' actions depending upon conduct occurring approximately six years ago, it is becoming increasingly difficult to present defenses and obtain discovery without impairment. (*Id.* at pp. 30-34.) The court agrees that Plaintiffs have not prosecuted this action.

The court asserts that, having reviewed the Motion of Defendant and the evidence supplied and applicable law as summarized, it will GRANT the Motion of Defendants, Tanglewood Investments, Inc., AF Acquisition Company, and Ameriforge Corporation, a Texas

Corporation, for Summary Judgment or, in the alternative, Motion for Dismissal for Want of Prosecution (Doc. 64), thereby dismissing all claims against Defendants.

Accordingly, it is hereby

**ORDERED** that the Motion of Defendants Tanglewood Investments, Inc., AF Acquisition Company, and Ameriforge Corporation, a Texas Corporation, for Summary Judgment or, in the alternative, Motion for Dismissal for Want of Prosecution (Doc. 64) is **GRANTED**.  It is further

**ORDERED** that the Plaintiffs' action is **DISMISSED** for want of prosecution as to all Defendants, including defendants Mario Favretto and Global Industrial Technologies Foundation, except those Defendants subject to the automatic stay due to bankruptcy,.

**SIGNED** at Houston, Texas, this 15th day of September, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE